COSTANZO, APPELLANT, *v.* GAUL, APPELLEE.

[Cite as Costanzo v. Gaul (1980), 62 Ohio St. 2d 106.]

(No. 79-532—Decided April 30, 1980.)

*Messrs. Kalk & Valore* and *Mr. Zeev Friedman,* for appellant.

*Mr. Daniel P. McDonnell,* for appellee.

*Per Curiam.* Appellant sets forth the following single proposition of law:

"A statement made by a city councilman when he was interviewed by a newspaper reporter is not qualifiedly privileged where the statement is not made in good faith, is not limited in its scope to a topic upon which said councilman has a right, duty or interest to speak, is not made upon a proper occasion, and is published in an improper manner and to improper parties."

In resolving the questions presented, we must briefly review the applicable law of slander and, more particularly, the applicable principles of the law of privilege relative to slanderous publications.

Privilege in the law of defamation recognizes certain communications as not being within the rules imposing liability for defamation. A privileged communication is one which, except for the occasion on which or the circumstances under which it is made, would be defamatory, and actionable. The defense of privilege is a matter of public policy in furtherance of the right of free speech. See 50 American Jurisprudence 2d 695, Libel and Slander, Section 192.

Privileged communications are divided into two general classes—those which are absolutely privileged, and those which are qualifiedly or conditionally privileged. The basic difference between the two as generally stated is that complete protection is afforded by absolute privilege, whereas a

qualified or conditional privilege affords protection only in the absence of ill motive or malice in fact. *Id.* at page 696.

The application of an absolute privilege is to be found in only very limited areas of activity in our society. It has been generally limited to legislative and judicial proceedings, and other acts of state, such as communications made in the discharge of a duty of the Governor and heads of the executive departments of a state.

Absolute privilege is conferred upon members of the Congress of the United States with respect to matters published in the performance of their legislative functions, by Section 6 of Article I of the United States Constitution.*

A similar privilege is conferred upon members of most state legislative bodies either by state constitution or by state statute. See, *e.g.*, Section 12, Article IV, Ill. Constitution; Section 43, Ky. Constitution; Section 11, Article IV, Mich. Constitution. In Ohio, senators and representatives of the General Assembly are provided an absolute privilege for statements made in session, by Section 12, Article II, of the Ohio Constitution, which provides: "***for any speech, or debate, in either House, they shall not be questioned elsewhere."

Therefore, with respect to Congress and many state legislative bodies, the absolute privilege in uttering defamatory matters is applicable to any speech, debate, vote, report of action done in session without regard to the motive or reasonableness of the conduct. *McGovern* v. *Martz* (U.S.D.C. 1960), 182 F. Supp. 343.

Whether an absolute privilege is extended to defamatory matter published in the course of legislative proceedings of city councils and other local governmental legislative bodies, such as county commissioners, is not a matter of uniformity throughout the country. See Annotation 40 A.L.R. 2d 941.

In some cases the absolute privilege has been held not to

---

* However, this so-called Speech or Debate Clause does not protect transmittal of information by individual members of Congress by press releases, newsletters, or mailed copies of the Congressional Record. *Hutchinson* v. *Proxmire* (1979), _____ U. S. _____, 61 L. Ed. 2d 411. In *Proxmire,* the Supreme Court held that Senator Proxmire's commentary on his "Golden Fleece of the Month Award," relating to Hutchinson's government research into jaw grinding in monkeys, in a press release and newsletters, was not absolutely privileged.

be available to members of local governmental legislative bodies. See *Mills* v. *Denny* (1954), 245 Iowa 584, 63 N.W. 2d 222; *McClendon* v. *Cloverdale* (Super. Ct. 1964), 57 Del. 568, 203 A. 2d 815. These cases state that the absolute privilege is limited to the state legislature, the courts, and quasi-legislative bodies.

Other cases have extended the absolute privilege to members of governing bodies of political subdivisions, if the defamatory matter was published during the course of the official proceedings of the body, and if the matter as published was within the scope of that body's authority, and the statements or utterances are pertinent to the subject under consideration, discussion or debate of the legislative body. See, *e.g.*, *Wachsmuth* v. *Merchants' Nat. Bank* (1893), 96 Mich. 426, 56 N.W. 9; *Scott* v. *McDonnell Douglas Corp.* (1974), 37 Cal. App. 3d 277, 112 Cal. Rptr. 609; *Jacobs* v. *Underwood* (Ky. 1972), 484 S.W. 2d 855.

An example of the latter position is set forth in the case of *Tanner* v. *Gault* (1925), 20 Ohio App. 243, concerning the defamatory statement of county commissioners relative to official acts of the county surveyor. The court held that the utterances were absolutely privileged on the ground that it was pertinent for the commissioners to state their reasons for enacting a particular regulation regarding materials for a county road.

We believe that the rule of absolute privilege may reasonably be applied to utterances made during the course of official proceedings by members of local governing bodies, at least where the statements relate to a matter under consideration, discussion or debate.

However, such a rule of absolute privilege will not be extended to an utterance of defamatory material not published during an official proceeding. We find that the Court of Appeals below correctly stated that an absolute privilege should not be extended to members of city council, where there is no pending legislation relating to the subject matter of the alleged defamation and where the publication is beyond the legislative forum.

We hold that an utterance or publication of a defamatory

statement made by a member of a legislative body of a local governmental entity, which utterance is made other than in a legislative session or related meeting, should be afforded a qualified rather than an absolute privilege.

The principles applicable to qualified privilege were discussed in *Hahn* v. *Kotten* (1975), 43 Ohio St. 2d 237, a case involving an action in slander brought by an insurance agent against the insurance company he formerly represented. The alleged defamation in *Hahn* was correspondence by the company to policyholders, stating that the plaintiff had been terminated as an agent of the company, and that the company questioned the capability of the plaintiff to perform as an insurance agent.

This court held that the company had a qualified privilege to publish such material in that it had a business right to protect, and that the plaintiff did not have a right to recover, since there was no showing by the plaintiff that the defendant acted with "actual malice."

The second paragraph of the syllabus in *Hahn* sets forth the standard adopted in this state as to when a qualified privilege is exceeded:

"A qualified privilege protecting the making of defamatory statements is exceeded when the statements are made with 'actual malice,' that is, with knowledge that the statements are false or with reckless disregard of whether they were false or not."

Accordingly, this court in *Hahn* reversed the Court of Appeals and reinstated the judgment of the Court of Common Pleas which had directed a verdict for the defendant insurance company.

Applying the law of *Hahn* to the instant case, the plaintiff's evidence showed that the defendant was a councilman of the city of Cleveland who had published a statement concerning a matter which was reasonably within his councilmanic duties. This established a qualified privilege for the defendant. Further, the plaintiff's evidence failed to prove actual malice.

Therefore, based upon the law established by *Hahn,* the trial court did not err in directing a verdict at the conclusion of

the plaintiff's case. The judgment of the Court of Appeals is hereby affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, P. BROWN, SWEENEY and LOCHER, JJ., concur.

W. BROWN, J., concurs in the judgment.

HOLMES, J., concurring. I concur in the majority opinion herein, in that the law as enunciated in the syllabus law of *Hahn* v. *Kotten* (1975), 43 Ohio St. 2d 237, controls until such law is overruled or modified. However, I feel that additional principles of law should be established in order to determine the applicability of the qualified privilege in a given instance.

I am in agreement with the majority that the legal principle of qualified privilege may generally be applied to published statements of members of local governmental legislative bodies made other than in official proceedings, but concerning their official duties. However, I feel, as did the three dissenting members of this court in *Hahn* v. *Kotten* (1975), 43 Ohio St. 2d 237, 245, that there need be more than a finding of the absence of "actual malice" to sustain the qualified privilege.

As pointed out in the majority decision of *Hahn,* but not specifically followed in the syllabus law of the case, the principle of the qualified privilege was "defined and applied in a well-considered Ohio appellate case, *West* v. *People's Banking & Trust Co.* (Washington County, 1967), 14 Ohio App. 2d 69." This court then approvingly set forth the following language of *West* where the Court of Appeals, in discussing the necessary requirements for establishing the defense of qualified privilege, stated, at page 72, as follows:

" 'A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made

in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.***' "

The elements of qualified privilege as noted in *West,* and seemingly adopted by this court in the decision in *Hahn,* are: (1) good faith of the one claiming the privilege; (2) an interest to be upheld; (3) a statement limited in its scope to the interest to be upheld; (4) the statement made on a proper occasion; (5) a publication of the statement in a proper manner; and (6) the publication made to proper parties only.

It seems to me, at least in reference to some of these elements, that the determination as to whether they were satisfied, or exceeded, by the defendant constitutes a jury question. Accordingly, it is stated, in 50 American Jurisprudence 2d, 805, Libel and Slander, Section 287, as follows:

"Unnecessary defamation is not countenanced, and one who goes beyond what a qualifiedly privileged occasion demands by being unnecessarily defamatory is not protected. It must appear that the publisher of the defamation was compelled to employ the words complained of, and if he could have done all that his duty or interests demanded without libeling or slandering the plaintiff, his imputations are not privileged.

"Whether or not a publication went beyond what the occasion required generally is a question of fact for the jury."

I agree with Justice Stern when he stated in his dissent in *Hahn, supra,* at page 251, that:

"***I would suggest that the proper rule, as stated by Prosser,***'is that the defendant is required to act as reasonable man under the circumstances, with due regard to the strength of his belief, the grounds that he has to support it, and the importance of conveying the information.

" '****

" '***Once the existence of the privilege is established, the burden is upon the plaintiff to prove that it has been abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what is said. Unless only one conclusion can be drawn from the evidence, the determination of the question whether the privilege has been abused is for the jury.***' "

I believe that the law of Ohio should require the jury to determine whether, upon the evidence adduced, the defendant abused his qualified privilege by going beyond the scope of the legislative interest to be upheld, or whether there was an excessive publication, in that the particular newspaper was published considerably beyond the defendant's particular ward.