CREPS, APPELLANT, *v.*
WALTZ ET AL., APPELLEES.

(No. WD-81-55—Decided
March 19, 1982.)

*Mr. Bernard K. Bauer,* for appellant.
*Mr. Charles F. Kurfess,* for appellees.

*Per Curiam.* This cause came on to be heard upon the record in the trial court. Each assignment of error was reviewed by the court and upon review the following disposition made:

This case comes before this court on appeal from judgment of the Wood County Court of Common Pleas, granting summary judgment in favor of appellee, Virginia M. Waltz.

On June 18, 1979, appellant, Carlene M. Creps, filed a complaint against appellee, Virginia M. Waltz and others, seeking compensatory and exemplary damages for injuries allegedly sustained as a result of the publication by appellee and others of an unsolicited opinion disparaging appellant's professional reputation.

On December 22, 1980, appellant's claims against the other defendants having been previously disposed of, the trial court granted summary judgment in favor of appellee and continued the case pending determination of certain counterclaims. On July 31, 1981, the trial court entered final judgment in the case. Thereafter, appellant timely brought this appeal, presenting the following assignment of error:

"The Trial Court erred, as a matter of law, in granting summary judgment in this action as there existed genuine issues of material fact and reasonable minds could come to differing conclusions, which conclusions may not be adverse to the non-moving party and, as a matter of law, the moving party was not entitled to judgment pursuant to Rule 56(C) of the Ohio Rules of Civil Procedure."

Our review of the record discloses the following pertinent information. The publication upon which appellant based her claims was a letter sent by appellee and certain others to Dr. Charles Means, the Vice Provost for Academic Services, Bowling Green State University. At the time, appellant, a licensed real estate broker, was employed by the university as an instructor of "Real Estate Principles" in the Continuing Education Program. Appellee and the others who signed the letter were also licensed real estate brokers or salespersons. The letter contained the following statement:

"It is our consensus of opinion and request that Ms. Carlene Creps not be retained as a Future Instructor in the Continuing Education Curriculum at Bowling Green State University as a result of both past and recent unethical, questionable and unprofessional practices in her own

daily conduct in Real Estate, her methods of class teaching, etc."

Carbon copies of the letter were sent to Dr. Edieann Biesbrock-Didham, Director of the Continuing Education Program; Dr. Hollis A. Moore, President of Bowling Green State University; and Mr. Timothy Lockwood, Education Director for the Ohio Association of Realtors.

Appellee contends that the trial court properly granted her motion for summary judgment for the reason that the statement made in the letter fell within the purview of qualified or conditional privilege. Appellant contends, however, that a qualified privilege did not exist in this case and, in the alternative, that if such a privilege did exist, it was exceeded.

In *Hahn* v. *Kotten* (1975), 43 Ohio St. 2d 237 [72 O.O.2d 134], the Ohio Supreme Court addressed the question of the nature of a qualified privilege, at 243-244, as follows:

"* * * As Prosser states in his Law of Torts (4 Ed.) 786, Section 115: '* * * It is difficult to reduce the cases to any single statement, and perhaps no better formula can be offered than that of Baron Parke that the publication is privileged when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." '

"A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it. Frequently, in such cases, there is a legal, as well as a moral, obligation to speak. This is most obvious in the case of those who have entered upon or are considering business dealings with one another.

"As stated in 50 American Jurisprudence 2d 698, Libel and Slander, Section 195:

" 'Conditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, *and makes a showing of falsity and actual malice essential to the right of recovery.*

" 'A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. *The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.' "* [Emphasis added.]

Thus, the threshold issue presented in a case involving a qualified privilege is whether a commonality of interest existed between the publisher and the recipient. In the case *sub judice,* the record discloses the following with respect to this issue: The letter concerned the advisability of continued employment of appellant as an instructor in the Continuing Education Program for Real Estate at Bowling Green State University. Appellee and the others who signed the letter were local real estate brokers and salespersons. In their depositions, several of the brokers indicated that they believed they had a professional interest in the quality of the Continuing Education Program because many of the students remained in the area to pursue careers in real estate. Further, appellee contended that, pursuant to the Code of Ethics for the real estate industry, the brokers had a professional obligation with respect to the program to insure that the students were fully and properly prepared and that professional standards were maintained.

The recipients of the letter were three officials of the university, all of whom were responsible for the Continuing Education Program, and the Education

Director of the Ohio Association of Realtors.

Considering the foregoing, we find that the trial court did not err in determining that reasonable minds could come to but one conclusion with respect to this issue; to wit, that appellee had a professional interest in the maintenance of professional standards in the Continuing Education Program for real estate and that appellee's communication concerning this interest had been limited to proper parties only.

Appellant further contends, however, that the publication was made with actual malice and, therefore, that the privilege, if it existed, was exceeded.

In the second paragraph of the syllabus of *Hahn, supra,* the Ohio Supreme Court considered this issue, holding as follows:

"A qualified privilege protecting the making of defamatory statements is exceeded when the statements are made with 'actual malice,' that is, *with knowledge that the statements are false or with reckless disregard of whether they were false or not. (New York Times Co. v. Sullivan,* 376 U.S. 254, followed.)" [Emphasis added.]

Our review of the record discloses no evidence which meets the high standard of proof required to establish actual malice as defined above. There is no indication in the record that appellee had knowledge that the statements made in the letter were false. Further, while none of those involved in sending the letter conducted an independent investigation, the information upon which their concern was based was provided by various sources, including former students of appellant and other real estate brokers. Nothing in the record indicates that there was reason to question the reliability of these sources.

We, therefore, find that the trial court did not err in determining that, in accordance with the standards set forth in Civ. R. 56(C), reasonable minds could come to but one conclusion in that the publication had not been made with actual malice. See, also, *Costanzo* v. *Gaul* (1980), 62 Ohio St. 2d 106 [16 O.O.3d 134].

Considering the foregoing, we find appellant's assignment of error not well-taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Wood County Court of Common Pleas is affirmed.

This cause is remanded to said court for execution of judgment and assessment of costs. Costs to appellant.

*Judgment affirmed.*

DOUGLAS and BARBER, JJ., concur.

WILEY, J., dissents.

WILEY, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

WILEY, J., dissenting. I respectfully dissent from the majority of the court herein. Upon examination of the fourteen depositions filed on behalf of the appellant herein, together with the exhibits attached thereto, I find that reasonable minds can come to more than one conclusion and that summary judgment on behalf of the appellee is contrary to law.

In the case of *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245 [75 O.O.2d 291], the Supreme Court, at page 253, stated, in pertinent part:

"On the issue of privilege, the trial court gave the following instructions to the jury:

" 'The second defense is that the words spoken were privileged. That simply means that under the circumstances it was right for the defendant or all right for the defendant to say them. A communication is privileged when it is made in good faith on a subject in which the speaker has an interest or duty to another with a corresponding interest or duty even though what is said may be slanderous and untrue.

" 'For example, you heard evidence here of a conference in the office between Mrs. Ankeny, the plaintiff, and Havens, the manager, and Elnora Schmidt, the personnel director, in which this whole cookie business was discussed and plaintiff was then discharged. Both Havens and Schmidt had duties and interest in the conduct of the company business and in the conduct of the employees. So they had a right and a duty to talk about the cookies being in Mrs. Ankeny's locker and as long as they spoke in good faith, even though what they said was not true, it is privileged and cannot form the basis of a charge of slander.

" 'If the defendant has proven to you by a preponderance of the evidence that all the communications made by Havens or other managerial employees of the Murphy Co. about Mrs. Ankeny were made in good faith and were made only to others with a similar business interest or duty, then they would be privileged and you would then return verdicts for the defendants.

" 'You notice that I said, if these communications were made in good faith. If the slanderous words were motivated by malice, as I have previously defined it, they are not privileged and defendant would be liable, whatever his relationship to the party to whom this slander was communicated.

" 'To conclude then, if the plaintiff has failed to prove by a preponderance of the evidence that the defendant maliciously charged her before a third person with being a thief or if the defendant has shown by a preponderance of the evidence that whatever was said was true or was said under privileged circumstances, then you would return a verdict for the defendant on this first cause of action, the claim for slander.

" 'On the other hand, if the plaintiff has proven by a preponderance of the evidence that the defendant maliciously charged her before a third person with being a thief and the defendant has failed to establish by a preponderance of the evidence the truth of the words or that they were spoken under privileged circumstances, then you would return a verdict for the plaintiff * * *.' "

The Supreme Court in *Fawcett, supra,* quoted from the case of *Hahn, supra,* cited in the majority opinion herein.

My examination of the cases of *Fawcett, supra,* and *Hahn, supra,* reveals that the determination as to whether or not a privilege exists in a libel case is generally a question of fact for the jury. The record in the case *sub judice* indicates that questions of fact exist first, as to the good faith of the appellees, second, as to the exact interest to be upheld, third, whether the statement contained in the alleged libelous letter was limited in its scope to this purpose, fourth, whether a proper occasion existed for the publication of the letter, fifth, whether the publication itself was in a proper manner, and sixth, whether it was limited to proper parties only.

Even if the jury should determine that a qualified privilege existed, a question of fact remains as to whether the publication of the alleged libelous letter was motivated by malice.

It is interesting to note, at page 255, of *Fawcett, supra,* that the Supreme Court stated:

"It is evident that the trial court's instructions to the jury on the issue of privilege constituted a correct statement of the law of qualified privilege.

"It is the opinion of this court that, on the record presented, it would have been improper for the trial court to decide, as a matter of law, that there was no qualified privilege or that it had not been exceeded by defendants."

I respectfully submit, on the record presented herein, it was improper for the trial court to decide, as a matter of law, that a qualified privilege did exist; that even if a qualified privilege existed, it was not exceeded by appellee; and that the publication was not motivated by malice.