KNECHT, APPELLANT, *v.* VANDALIA MEDICAL CENTER, INC. ET AL., APPELLEES.

(No. 8288—Decided February 29, 1984.)

Mr. *John E. Breidenback,* for appellant.

Mr. *Robert F. Cowdrey,* for appellee Vandalia Medical Center, Inc.

Mr. *Leo F. Krebs,* for appellee Frances Gillespie.

ZIEGEL, J. Plaintiff-appellant's complaint sets forth a claim for damages for invasion of her right to privacy. Plaintiff, Donna J. Knecht, individually and as next friend of Amber Higgins, a minor, alleges that she was a patient of

physicians employed by the defendant-appellee Vandalia Medical Center, Inc., and that the defendant-appellee Frances Gillespie was a non-professional employee of the medical center. She complains that as such employee Gillespie acquired confidential information as to the physician-patient relationship between her and the physicians employed by the medical center; and that Gillespie, without her consent or authorization, tortiously and intentionally divulged to unauthorized individuals the nature and cause of medical treatment and advice she had received from the medical center, for which she demands both compensatory and punitive damages. After filing appropriate answers and completing discovery, each appellee moved for summary judgment. Without amplifying its opinion, the trial court sustained each motion and rendered judgment in favor of the appellees, from which judgment this appeal has been duly perfected. Error is assigned that the trial court erred in sustaining the motions for summary judgment.

There are no material factual disputes. For a number of years appellant had been a patient at the medical center, where Gillespie was employed as a secretary-receptionist. In May 1980, appellant received treatment at the medical center for a venereal disease ("V.D."), and through her employment at the medical center, Gillespie became aware of this treatment. A short time before September 9, 1980, Gillespie's son, John, a high school senior, had been employed by Thrifty Rent-A-Car, along with two other young men and two young women, one of whom was appellant, to drive cars from Vandalia to Kansas City. These five returned in the same car, and for reasons unimportant to this case, the return trip took longer than Thrifty management thought it should have taken. On September 9, 1980, when Gillespie came home for

lunch, her son advised her that Thrifty said they could never drive for them again because of the time they took, and that Thrifty thought that the reason for the time length was because the young men were "messing around" with the "girls." Gillespie inquired as to who the "girls" were, and when she found out that one of them was appellant, she told her son, "Well, if this is true, then you'd better get yourself checked at the doctor's office," and she told him that appellant had been checked for V.D. She admitted that this information was very confidential, but that out of shock or protection as a mother she had told her son. She did not inquire as to whether John had any sexual contact with appellant, and there is no evidence to that effect. Thereafter, John told Phil Sisk, one of the young men on the Kansas City trip. There was no evidence that anyone else received information as to appellant's V.D. history from Gillespie, John or Phil.

As to the awarding of summary judgment to Gillespie, appellant contends that Gillespie had no legal excuse for her divulgence of confidential medical information concerning appellant, and that such wrongful divulgence of such information is actionable in Ohio. Appellant's primary reliance is placed upon *Hammonds* v. *Aetna Cas. Ins. Co.* (N.D. Ohio 1965), 237 F. Supp. 96. That case however, involved the primary question of whether an insurance company could be legally liable for inducing the breach of a confidential relationship between a physician and patient. In *dicta,* that court did discuss the physician-patient relationship and concluded that because of R.C. 2317.02, the statute which prevents a physician from testifying in court as to certain facets of the physician-patient relationship, and R.C. 4731.22, a statute which makes willful betraying of professional confidence a basis for disciplinary action against the violating physician,

the patient had a cause of action against the physician. That case did not discuss the question of whether a claim for relief arose against an employee of the physician who disclosed confidential information. It has been held that the provisions against testifying in R.C. 2317.02 do not apply to a nurse. See *Weis* v. *Weis* (1947), 147 Ohio St. 416 [34 O.O. 350], wherein paragraph four of the syllabus provides:

"Section 11494, General Code [now R.C. 2317.02], making privileged communications between certain persons, being in derogation of the common law, must be strictly construed, and consequently such section affords protection only to those relationships which are specifically named therein. The relationship of nurse and patient not being named in the statute, no privilege is extended to communications between a patient and his nurse."

In her brief, appellant argues that "failure to require a nondisclosure duty of Mrs. Gillespie would create a nonsense situation whereby the lips of the physicians themselves would be absolutely sealed and yet their nonprofessional staff would have license to chat at will regarding confidential medical information gained in the office." However, she does not cite any cases to support this proposition. Conceivably, under a proper factual posture, appellant might have a claim for relief for invasion of her right to privacy. *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60]. No such facts exist here. In the first place, Gillespie did not "chat at will" about appellant's medical situation; she only told her son. In the second place, in telling her son about appellant's venereal disease experience, she enjoyed a qualified privilege. *Hahn* v. *Kotten* (1975), 43 Ohio St. 2d 237 [72 O.O.2d 134].

Justice Holmes, in his concurring opinion in *Costanzo* v. *Gaul* (1980), 62 Ohio St. 2d 106, 112 [16 O.O.3d 134], quotes favorably the definition applied in *West* v. *People's Banking & Trust Co.* (1967), 14 Ohio App. 2d 69, at 72 [43 O.O.2d 197]:

" 'A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty * * *.' "

A more concise and applicable definition is found in *Creps* v. *Waltz* (1982), 5 Ohio App. 3d 213, paragraph two of the syllabus:

"A statement falls within the purview of a qualified or conditional privilege where a commonality of interest exists between the publisher and the recipient and the communication is of a kind reasonably calculated to protect that interest. * * *"

In the case before us the "commonality of interest" between a mother and her son under the facts of the case is readily apparent. Appellant's first assignment of error is accordingly overruled.

The second assignment of error concerns the granting of summary judgment in favor of the Vandalia Medical Center, Inc. The principal defense advanced by the medical center in the trial court was that, assuming that tort liability can be imposed upon the secretary-receptionist, the undisputed facts establish that the disclosure by the secretary-receptionist was made outside the scope of her employment. In this appeal, appellant contends that since Gillespie acquired confidential information regarding appellant while in the scope of her employment, by reason of agency and public policy, the medical center is liable for its servant's wrongful divulgence of that confidential information. Again, no cases are cited to support this contention.

It is well-settled that corporations

are liable for injuries caused by the wrongful acts of employees of the corporation if said acts are within the scope of employment. It is also well-settled that if the facts are not in dispute or inferences cannot be drawn from the facts so as to give rise to a dispute, the question of whether an employee was acting within the scope of his employment is not one of fact, but is one of law for the court. A case in point is *Biddle* v. *N.Y. Central RR. Co.* (1930), 43 Ohio App. 6, at 8, where the court stated:

"[O]rdinarily, an act committed by a servant when he is off duty, as at the noon hour, * * * is not within the scope of his employment and the master is not liable therefor."

Clearly, Gillespie was not functioning within the scope of her employment, when, while at home during her noon lunch hour, she engaged in a conversation with her son in which she divulged confidential information which she had obtained during the course of her employment.

Appellant further submits that medical center had some kind of "vicarious" liability because of Gillespie's divulgence of confidential information, that exists separate and apart from agency considerations. No citations are given to support such a proposition, and we have been unable on our own to find any. It occurs to us that the creation of this type of liability is a legislative matter, and not one for the judiciary.

Finding neither of appellant's assignments of error to be well-taken, the judgment of the Montgomery County Court of Common Pleas will be affirmed.

*Judgment affirmed.*

BROGAN, P.J., and KERNS, J., concur.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.