**Terry NEAL, et al., Plaintiffs,**

v.

**CORNING GLASS WORKS CORPORATION, et al., Defendants.**

**No. C–3–88–070.**

United States District Court, S.D. Ohio, W.D.

June 22, 1989.

Scott F. Zimmerman, Mark A. Fontana, Pittsburgh, Pa., John E. Tate, Peter K. Newman, Dayton, Ohio, for defendant Corning Glass Works Corp.

Gregory C. Gibson, Dayton, Ohio, for defendant Dr. James Armacost.

## DECISION AND ENTRY OVERRULING AMENDED MOTION FOR SUMMARY JUDGMENT BY DEFENDANT CORNING GLASS WORKS (DOC. # 22) AND SUSTAINING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT JAMES O. ARMACOST, D.O. (DOC. # 35); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT ARMACOST AND AGAINST PLAINTIFFS

RICE, District Judge.

This case involves claims arising from Plaintiff's termination from employment by Defendant Corning Glass Works Corporation (Corning). It is stipulated that on February 4, 1986, Plaintiff became incapacitated while working at Defendant Corning's Greenville plant and that, as a result, he was transferred by ambulance to Wayne Hospital Emergency Room, where he was examined and treated by Defendant James Armacost, D.O., who ordered that a blood sample and urine sample be taken from Plaintiff for a drug/alcohol screen, the results of which revealed the presence of Cannibinoids (Marijuana) in Plaintiff's urine. (Doc. # 36, pp. 7–8). Approximately one week later, Plaintiff was terminated from his employment "for violation of plant rules—working while under the influence of drugs," (Doc. # 23, p. 6) on the basis of the results of the test ordered by Defendant Armacost (Doc. # 1, ¶ 21).

On September 9, 1988, this Court filed a Decision and Entry (Doc. # 21) sustaining in part and overruling in part Defendant Corning's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. # 8). The Court dismissed Plaintiff's claim under Ohio Revised Code § 4112.02 *et seq.* but held:

This Court is unable to state, at this time, that it agrees with the Defendant's position that Terry Neal's invasion of his

Theodore R. Shaman, Jr., Dayton, Ohio, for plaintiffs.

right of privacy claim is nothing more than an indirect, albeit untimely, attempt to relitigate the merits of his discharge by the Defendant and, as such, is preempted by § 301 of the Labor Management Relations Act and, thus, is barred by the applicable six-month statute of limitations. (Doc. # 21, p. 3). The Court then granted leave to Defendants to file an Amended Motion for Summary Judgment directed toward this issue (Doc. # 21, p. 4). This case is now before the Court on the Amended Motion for Summary Judgment of Defendant Corning (Doc. # 22) and on the Motion for Summary Judgment of Defendant Armacost (Doc. # 35). For reasons briefly set forth below, the Motion of Defendant Armacost, to which Plaintiff filed no response, is granted and the Motion of Defendant Corning is overruled.

On a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c).

A. DEFENDANT ARMACOST'S MOTION FOR SUMMARY JUDGMENT (DOC. # 35)

On the record thus far, there are facts in evidence which suggest that with respect to the incidents at issue:

1. After initial testing failed to provide an explanation for Plaintiff's symptoms, a drug and alcohol test was "the next logical step in the process of diagnosing" (Armacost deposition, p. 9).

2. Defendant Corning may have requested the drug screening (Doc. # 31, Terry Neal affidavit, ¶ 9).

3. Defendant Armacost treated Plaintiff not only as a general patient admitted to the hospital emergency room, but also pursuant an arrangement whereby he would treat employees of Defendant Corning when Dr. Gullia, the plant doctor, was not available (Armacost deposition, Tr. 7).

4. Dr. Gullia is responsible for treatment of Defendant Corning's employees incapacitated at work and for return-to-work physicals (Gullia affidavit, ¶ 2; T. Neal deposition, Tr. 94).

5. Dr. Gullia had previously treated and/or examined Plaintiff (T. Neal deposition, Tr. 94).

6. Dr. Gullia obtained the test results from Defendant Armacost as part of his standard follow-up procedures (Gullia affidavit, ¶ 6).

7. It is Dr. Gullia's usual procedure to review employee medical records and test results with Defendant Corning's personnel officials (Gullia affidavit, ¶ 5).

Plaintiff alleges that by disclosing drug screen results to Defendant Corning without Plaintiff's authority (Doc. # 1, ¶ 19), Defendant Armacost breached an implied contract of confidentiality (Doc. # 1, ¶ 22) and violated Plaintiff's common law right to privacy (Doc. # 1, ¶ 29). In his Motion for Summary Judgment, Defendant Armacost responds that there are no facts in evidence from which it could be reasonably inferred that there was a willful betrayal of a confidence by Defendant Armacost and that, therefore, Defendant Armacost is entitled to judgment in his favor as a matter of law (Doc. # 35, p. 6).

■ Under Ohio law, "a physician can be held liable for unauthorized disclosures of medical information." *Littleton v. Good Samaritan Hosp.*, 39 Ohio St.3d 86, 98, 529 N.E.2d 449, 459 n. 19 (1988). The availability of a cause of action arises from the Ohio legislature's expression of public policy in O.R.C. § 4731.22(B), prohibiting physicians from willfully betraying a professional secret. *Hammonds v. Aetna Casualty*, 237 F.Supp. 96, 101 (N.D.Ohio 1965). The *Littleton* court noted that "an exception exists for disclosures necessary to protect individual or public welfare." *Littleton*, at 459, n. 19. "Under a proper factual posture [a plaintiff alleging unauthorized disclosure of medical information] might have a claim for relief for invasion of his right to privacy." *Knecht v. Vandalia Medical Center*, 14 Ohio App.3d 129, 470 N.E.2d 230, 232 (1984).

The *Knecht* court also noted, however, that a cause of action for invasion of privacy will not lie where the unauthorized disclosure was privileged, and the court quoted the following definitions:

1. "A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty." *Knecht* [470 N.E.2d] at 232, quoting *Costanzo v. Gaul*, 62 Ohio St.2d 106, 112, 403 N.E.2d 979 (1980) and *West v. Peoples Banking and Trust Company*, 14 Ohio App.2d 69, 72, 236 N.E.2d 679 (1967).

2. "A statement falls within the purview of a qualified or conditional privilege where a commonality of interest exists between the publisher and the recipient and the communication is of a kind reasonably calculated to protect that interest." *Knecht* [470 N.E.2d] at 232, quoting *Creps v. Waltz*, 5 Ohio App.3d 213, 450 N.E.2d 716 (1982).

■ This Court must conclude that while the disclosure of Plaintiff's test results to Dr. Gullia was technically unauthorized by Plaintiff, Defendant Armacost's actions under the facts of this case could not reasonably be said to constitute a willful betrayal of a professional secret: Defendant Armacost disclosed the medical information only to the physician otherwise responsible for the treatment of Plaintiff for conditions manifested in the course of or affecting his employment—a physician also bound by O.R.C. § 4731.22(B)'s mandate of confidentiality. Under the analogy to trust law articulated in *Hammonds v. Aetna Casualty*, 237 F.Supp. at 102, Defendant Armacost as trustee made the res/information available only to another trustee—Dr. Gullia—who also owed Plaintiff a fiduciary duty.

Furthermore, the disclosure to the plant doctor of evidence of drug usage which may have affected Plaintiff's work might constitute a disclosure necessary to protect the individual's welfare in the work environment. See *Littleton v. Good Samaritan Hosp.*, 529 N.E.2d at n. 19. The disclosure certainly falls under the qualified privilege which under *Knecht* bars recovery for invasion of privacy. 470 N.E.2d at 232. A reasonable jury could not find otherwise than that Defendant Armacost shared an interest in treating Plaintiff's medical condition with Dr. Gullia, that circumstances indicted the existence of a duty to disclose medical information, and that the disclosure of the test results at issue was reasonably calculated to protect their mutual interest.

Accordingly, this Court finds that there is no genuine issue as to material fact in that there was no willful betrayal of a confidence by Defendant Armacost. Accordingly, Defendant Armacost is entitled to summary judgment as a matter of law on Plaintiff's claims of breach of implied contract of confidentiality and violation of Plaintiff's common law right to privacy. Since Plaintiffs have failed to establish a genuine issue as to the principal claims, the derivative claim of Plaintiff Jeannie Neal against Defendant Armacost for loss of consortium must fail as well and Defendant

Armacost is entitled to summary judgment thereon as a matter of law.

Accordingly, judgment will enter in favor of the Defendant Armacost and against the Plaintiffs herein.

## B. DEFENDANT CORNING'S AMENDED MOTION FOR SUMMARY JUDGMENT (DOC. # 22)

Plaintiff alleges (surviving this Court's decision of September 9, 1988) that Defendant Corning requested and obtained drug screen test results without Plaintiff's consent, thereby violating his right to privacy (Doc. # 1, ¶ 31). On an Amended Motion for Summary Judgment, Defendant Corning argues that there is no cause of action for violation of Plaintiff's right to privacy, in that the allegedly confidential information was disclosed not by Defendant Corning but by Co-Defendant Armacost (Doc. # 23, p. 7), that the transmission of the information was privileged (Doc. # 23, p. 10), and that the claim is pre-empted by § 301 of the LMRA and is untimely thereunder (Doc. # 23, p. 12). Insofar as Plaintiffs might seek, as Defendant Corning contends, "to relitigate whether just cause under the collective bargaining agreement existed for Mr. Neal's discharge" (Doc. # 23, p. 14), any claim arising therefrom falls within the scope of § 301 of the LMRA, 29 U.S.C. § 185, which provides in pertinent part:

Suits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties.

■ While issues relating to plant rules, the decision to terminate Plaintiff, and the grievance process are dependent upon interpretation of the collective bargaining agreement, and thus subject to § 301 pre-emption, *Allis-Chalmers Corporation v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), there is no evidence in the record thus far that the means by which Defendant Corning obtained the information upon which it based the termination (as opposed to the question of

whether such information constituted just cause for termination) was covered by the collective bargaining agreement—that is, the transmission, unauthorized by Plaintiff, of medical information from the emergency treating physician Defendant Armacost to the plant physician, Dr. Gullia, to the personnel officials. Under Ohio law, a legally permissible end may not be achieved by means involving an unwarranted and unreasonable intrusion into one's private activities. *Housh v. Peth*, 165 Ohio St. 35, 40–41, 133 N.E.2d 340 (1956). Under *Hammonds v. Aetna Casualty*, 237 F.Supp. 96, (N.D.Ohio 1965), see discussion *supra*, a party who *induces* wrongful disclosure of medical information is liable for resulting injury. *Hammonds* at 102. The cause of action arises from state law, and, because there is no evidence that the cause of action or any defense thereto is related to or requires interpretation of any right or provision set forth in the collective bargaining agreement, this claim is not pre-empted under § 301.

■ The Court concludes that with respect to Plaintiff's claim that Defendant Corning wrongfully induced disclosure of medical information, a question of fact remains as to Defendant Corning's role in the ordering by Dr. Armacost of the drug test. Plaintiffs' assertions in their affidavits of statements made by the nurse that Defendant Corning requested those tests (Doc. # 31, T. Neal Aff. ¶ 7, J. Neal Aff. ¶ 5) constitute hearsay, regardless of whether those statements are or are not contradicted by their depositions. (See Doc. # 32, p. 2). Plaintiffs' assertions regarding Defendant Armacost's statements/admissions (T. Neal Depo., Tr. 78; J. Neal Depo., Tr. 34) are not hearsay since he is a party opponent. Fed.R.Evid. 801. The ambiguity/conflict in his testimony by letter and deposition (Armacost deposition, Tr. 8–11) goes to the weight of the evidence rather than the admissibility.

Even assuming that Defendant Corning had no role in the ordering of the tests, a genuine issue of material fact remains as to Defendant Corning's role in obtaining for personnel department officials the re-

sults obtained by Dr. Gullia. In a collective bargaining agreement, Plaintiff might waive his right to privacy regarding medical evidence of drug usage relevant to his employment, in recognition of his employer's interests in maintaining the safety and productivity of its work force through a drug free environment, thus permitting Defendant Corning to carry out a policy whereby a physician receiving otherwise confidential medical information regarding drug usage would properly transmit that information to personnel officials. There is, however, no evidence that the practice of personnel-official review of all medical records is covered by the collective bargaining agreement, and it may be argued that, insofar as a policy of transmission of medical information was enforced, that policy constitutes "a wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (1956).

Defendant argues that its procuring/obtaining the drug test results is protected by a qualified privilege as articulated in *Knecht v. Vandalia Medical Center*, 14 Ohio App.3d 129, 470 N.E.2d 230, 232 (1984). However, the position of Defendant Corning as an employer in relation to a treating physician differs substantially from the relationship of two treating physicians. Defendant Armacost and Dr. Gullia had a common interest in treating Plaintiff which required accurate information regarding the details of Plaintiff's medical condition. It cannot be held either (1) that as a matter of law the common interest of the employer and physician in ensuring that Plaintiff is fit for work requires disclosure of the specific drug screen results (as opposed to, perhaps, a physician's certification of the employee's medical status at the time of his return to work), especially in view of the obligation imposed on physicians through O.R.C. § 4731.22(B); or (2) that on the facts now before this Court, as a matter of law, a duty of disclosure of medical records was *reasonably* believed to exist among the parties. (*See Knecht*, 470 N.E.2d at 232). Accordingly, Defendant's

Motion for Summary Judgment on Plaintiff's claim that Defendant's actions in inducing the disclosure of confidential medical information violated his right to privacy, and on Plaintiff Jeannie Neal's derivative claim for loss of consortium, are overruled.