**TOTH et al.**

v.

**OHIO DEPARTMENT OF YOUTH SERVICES.**

Court of Claims of Ohio.

No. 99–09480.

Decided April 11, 2001.

4

*Darlene E. Chavers*, for plaintiffs.

*Betty D. Montgomery*, Attorney General, *Randall W. Knutti* and *Gabriel Jiran*, Assistant Attorneys General, for defendant.

RUSSELL LEACH, Judge.

Plaintiffs brought this action alleging claims of invasion of privacy, intentional infliction of emotional distress, violation of right of privacy, sexual harassment, retaliation, negligent retention and supervision, punitive damages, and loss of consortium. On June 7, 1999, plaintiffs' claim for punitive damages was stricken. This case was tried to the court on the sole issue of defendant's liability.

In August 1998, plaintiff[1] was employed as a corrections officer at the Scioto Juvenile Correctional Center ("SJCC"). On August 12, 1998, plaintiff completed an accident report regarding injuries he sustained while breaking up a fight between two juveniles. The next day, plaintiff noticed bruises on his shoulder, arm, and inner thigh and requested that the bruises be photographed to document his injuries.

Plaintiff received permission from Deputy Superintendent Hutchinson to have photographs taken by William Stump, a duty officer at SJCC. Plaintiff and Stump went to the restroom where plaintiff removed all of his clothing except his boxer shorts. Stump took three photographs of plaintiff's injuries. The photographs

---

1. "Plaintiff" shall be used to refer to Brian Toth throughout this decision.

were later submitted to defendant's personnel office along with plaintiff's accident report.

Dawna Chapman was a personnel officer at SJCC whose duties included processing injury claims. While Chapman was reviewing plaintiff's accident report, she became concerned about one of the photographs. Apparently, the photograph of plaintiff's bruised inner thigh also displayed a portion of his penis. Chapman called William Griffith, the security administrator at SJCC, to examine the photograph. Although Griffith was not plaintiff's supervisor, he took the photograph from the accident report. Chapman subsequently processed the report with the remaining two photographs.

On August 24, 1998, Griffith approached plaintiff at work and told him that he had "saved his ass" because plaintiff "could have been busted for pornography" since plaintiff's "dick was hanging out" in one of the photographs. When plaintiff expressed disbelief, Griffith told plaintiff to accompany him to ask Stump. All three of them then went to Griffith's office where Stump confirmed that he had seen the photograph and that it depicted a portion of plaintiff's penis. Plaintiff asked to see the photograph, and Griffith stated that it was being retained for safekeeping. Plaintiff left Griffith's office believing that the whole incident was some sort of prank.

On August 30, 1998, plaintiff sustained another injury at work. The next day, he took his paperwork to Chapman in the personnel office, and she began to laugh. When plaintiff asked why she was laughing, Chapman stated that she had seen the photograph with his "thing hanging out." Plaintiff then asked Jerry Green, defendant's payroll officer, whether he had seen the photograph and Green confirmed that he had seen it when it was initially brought into the personnel office.

On September 21, 1998, plaintiff spoke to his union president and the superintendent of SJCC. He also filed a written grievance regarding the incident. The grievance was forwarded to defendant's equal employment opportunity ("EEO") office. Plaintiff transferred to the Department of Youth Services in Circleville, Ohio, in February 1999. On July 8, 1999, Marcy Sutherland, superintendent of SJCC, recommended a three- to five-day suspension for Griffith. On August 2, 1999, defendant's central office approved a written reprimand.

Plaintiff alleges that he was continually harassed by Griffith and other employees who had either seen or heard about the photograph. Plaintiff further alleges that after he reported Griffith's actions regarding the photograph, defendant failed to separate Griffith from him. After plaintiff filed his grievance, Griffith made two comments to plaintiff. On one occasion, when plaintiff walked by, Griffith said, "Hey buddy, aren't we friends anymore?" Another time, when plaintiff was walking past Griffith with his lunch, Griffith said, "Hey, buddy, you got enough food?"

■ As a preliminary matter, defendant asserts that the doctrine of *res judicata* bars plaintiffs' claims because plaintiff was subject to a binding grievance procedure as required under his union's collective bargaining agreement. After a review of the evidence in this case, the court finds that plaintiffs' claims are not precluded by the collective bargaining agreement, since the claims are independent of R.C. Chapter 4117. See *Myers v. Riley* (1994), 98 Ohio App.3d 133, 648 N.E.2d 16; *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 572 N.E.2d 87. Therefore, the court makes the following determination.

I. Invasion of Privacy

■ In order for a plaintiff to state a claim under the "publicity" tort of invasion of privacy (1) there must be publicity, *i.e.*, the disclosure must be of a public nature, not private; (2) the facts disclosed must be concerning the private life of an individual, not his public life; (3) the matter publicized must be one that would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) the publication must have been made intentionally, not negligently; and (5) the matter publicized must not be a legitimate concern to the public. *Killilea v. Sears, Roebuck & Co.* (1985), 27 Ohio App.3d 163, 166–167, 27 OBR 196, 199–200, 499 N.E.2d 1291, 1294–1295. In this case, Chapman showed the photograph to Griffith because she was concerned about its content. Although Griffith was not Chapman's supervisor, he was a security officer and the court finds that it was not unreasonable for Chapman to seek guidance from Griffith regarding the matter. Griffith, however, took it upon himself to show the photograph to Stump and Green, who were not in his chain of command. While Griffith's actions were inappropriate, the court cannot find that Griffith's actions resulted in publicity.

■ " 'Publicity' means communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to 'publication' as that term of art is used in connection with liability for defamation as meaning any communication by the defendant to a third person." *Killilea*, 27 Ohio App.3d at 166, 27 OBR at 199, 499 N.E.2d at 1294.

While Griffith's actions of showing the photograph to Stump and Green started the spread of information regarding the photograph to other employees at SJCC, the court cannot conclude that Griffith's actions alone constitute publicity. Therefore, plaintiffs' claim for invasion of privacy must fail.[2]

---

2. Plaintiffs have also asserted a separate claim for unauthorized disclosure of medical records. It has been held that under certain factual situations, unauthorized disclosure of medical

## II. Intentional Infliction of Emotional Distress

To state a cause of action for intentional infliction of emotional distress, plaintiff must show that "(1) defendant intended to cause emotional distress, or [defendant] knew or should have known that [his or her] actions * * * would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 82, 603 N.E.2d 1126, 1132, citing *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 66, 463 N.E.2d 98, 103. Griffith's actions of showing the photograph to other employees was inappropriate and distasteful. However, the court finds that plaintiffs have failed to prove that Griffith's conduct was extreme and outrageous.

" "* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous" !' " *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 426, 453 N.E.2d 666, 671, quoting 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment *d.*

While Griffith's actions were unprofessional, *i.e.,* showing the photograph to other employees, making remarks to plaintiff, and teasing plaintiff, the court cannot find that his conduct was "utterly intolerable in a civilized community." Therefore, plaintiffs have failed to state a claim for intentional infliction of emotional distress.

## III. Violation of Right of Privacy

The portion of plaintiffs' complaint based on violations of Section 1983, Title 42, U.S.Code is not cognizable in this court. *Burkey v. S. Ohio Correctional Facility* (1988), 38 Ohio App.3d 170, 528 N.E.2d 607.

Section 1983, Title 42, U.S.Code states:

---

records may support a claim for invasion of privacy. *Knecht v. Vandalia Med. Ctr., Inc.* (1984), 14 Ohio App.3d 129, 14 OBR 145, 470 N.E.2d 230. However, since the court has found that plaintiffs failed to state a claim for invasion of privacy, it follows that the unauthorized disclosure claim must also fail.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *."

Under Section 1983, liability is imposed upon a "person" who deprives a citizen of constitutional rights. The United States Supreme Court has determined that a state is not a "person" for purposes of Section 1983, Title 42, U.S.Code. *Will v. Michigan Dept. of State Police* (1989), 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45, 58. Therefore, this court is without jurisdiction over plaintiffs' claim for violation of right of privacy.

IV. Sexual Harassment

R.C. 4112.02(A) states that it is an unlawful discriminatory practice "[f]or any employer, because of the * * * sex * * * of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." The Supreme Court of Ohio has held that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202–203, 421 N.E.2d 128, 131.

■ Plaintiff may establish a violation of R.C. 4112.02(A) by proving either of two types of sexual harassment: "(1) *'quid pro quo'* harassment, *i.e.*, harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) 'hostile environment' harassment, *i.e.*, harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment." *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 176, 729 N.E.2d 726, 732.

Plaintiffs do not allege a claim of *quid pro quo* harassment, but rather a claim of hostile environment harassment.

■ "In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment

and failed to take immediate and appropriate corrective action." *Hampel*, at paragraph two of the syllabus.

 "Conduct that is merely offensive is not actionable as hostile work environment harassment under Title VII." *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715, 723, 729 N.E.2d 813, 818, citing *Harris v. Forklift Systems, Inc.* (1993), 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 301–302. " '[W]orkplace harassment, even harassment between men and women, is [not] automatically discrimination because of sex merely because the words used have sexual content or connotations.' " *Hampel*, 89 Ohio St.3d at 180, 729 N.E.2d at 735, quoting *Oncale v. Sundowner Offshore Serv., Inc.* (1998), 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201, 207. Certain vulgar expressions often have " 'no connection with the sexual acts to which they make reference * * * [and] they are simply expressions of [personal] animosity or juvenile provocation,' rather than discrimination based on sex. Thus, '[a]lthough explicit sexual content or vulgarity may often take a factfinder a long way toward concluding that harassing comments were in fact based on gender, * * * this need not necessarily be the case.' " *Hampel*, 89 Ohio St.3d at 180, 729 N.E.2d at 735, quoting *Johnson v. Hondo, Inc.* (C.A.7, 1997), 125 F.3d 408, 412. Cf. *Shepherd v. Slater Steels Corp.* (C.A.7, 1999), 168 F.3d 998, 1010–1011.

 The court finds that defendant's employees' conduct was not based on sex, but rather on the fact that plaintiff was the one in the photograph. The court further finds that the teasing was a juvenile expression of provocation. In addition, the comments that Griffith made to plaintiff after he filed his grievance (regarding whether they were friends anymore and whether plaintiff had enough food) cannot be construed as sexual harassment.

V. Retaliation

 R.C. 4112.02(I) states that it is an unlawful discriminatory practice "[f]or any person to discriminate * * * against any other person because that person * * * has made a charge, testified, * * * or participated * * * in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." In order to state a cause of action for retaliation, plaintiff must establish "(1) that [he or] she engaged in protected activity, (2) that [he or] she was subjected to an adverse employment action, and (3) that a causal link exists between a protected activity and the adverse action." *Peterson*, 133 Ohio App.3d at 727, 729 N.E.2d at 822. The adverse action need not result in pecuniary loss, but must materially affect the plaintiff's terms and conditions of employment. *Wille v. Hunkar Laboratories, Inc.* (1998), 132 Ohio App.3d 92, 108, 724 N.E.2d 492, 503–504, at fn. 18, citing *Kocsis v. Multi–Care Mgt., Inc.* (C.A.6, 1996), 97 F.3d 876, 885. Factors to consider when determining whether an employment

action was materially adverse include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Natl. Bank & Trust Co. of Indiana* (C.A.7, 1993), 993 F.2d 132, 136. Changes in conditions that result merely in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute an adverse employment action. *Kocsis*, 97 F.3d at 886.

Plaintiff has failed to prove that defendant took any adverse employment action against him as a result of the filing of his grievance. Plaintiff points to the fact that he was called to supervisory conferences regarding his report writing and because his shirt was not tucked in. He also received a memo regarding the length of time he spent on the telephone and was placed on administrative leave for failing to break up a fight between residents. Plaintiff also alleges that he was being watched by security cameras while on duty. The court finds that the only action that rises to the level of an adverse employment action is being placed on administrative leave; however, plaintiff admits that he received administrative leave with pay and that he was cleared of any charges after the incident was investigated. Even if the court were to construe this as an adverse employment action, plaintiff has presented no evidence to prove that the leave was imposed as a result of filing a grievance.

VI. Negligent Retention and Supervision

The factors needed to state a claim for negligent retention and supervision are "(1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of such incompetence, (4) the employer's act or omission causing plaintiff's injuries, and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Peterson*, 133 Ohio App.3d at 729, 729 N.E.2d at 823, citing *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724, 739, 680 N.E.2d 161, 171. Marcy Sutherland, defendant's superintendent, testified that she first heard of the allegations regarding the photograph when she met with plaintiff and his union representative. Plaintiff then filed his grievance and Sutherland contacted plaintiff's EEO representative and initiated an investigation. After an investigation was conducted, Sutherland recommended that Griffith be suspended for three to five days. Sutherland testified that a recommendation for suspension, fine, or removal is reviewed by the central office, and that the decision of the central office is final. The central office ultimately recommended a written reprimand for Griffith. Based upon this evidence, the court finds that plaintiffs failed to prove that defendant mishandled the investigation and that

defendant's investigation caused plaintiffs' injury. In short, plaintiffs have failed to prove that during its investigation, defendant breached any duty owed to them.

In summary, the court finds that plaintiffs have failed to prove any of their claims by a preponderance of the evidence. Judgment shall be rendered in favor of defendant.

*Judgment for defendant.*

Russell Leach, J., retired, of the Franklin County Municipal Court, sitting by assignment.