BELL, Appellant,

v.

HORTON et al., Appellees.

[Cite as *Bell v. Horton* (1995), 107 Ohio App.3d 824.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 95CA2091.

Decided Dec. 20, 1995.

*Hapner & Hapner* and *Jon C. Hapner,* for appellant.

HARSHA, Judge.

This is an appeal of an order of the Ross County Court of Common Pleas dismissing counts four and five of appellant's complaint. Appellant assigns one error.

"The trial court erred in ruling that the statements made to a board of township trustees were absolutely privileged."

Appellant filed an action alleging slander, libel and malicious interference with contract against several defendants. Two of those defendants, Les and Rita Park (appellees),[1] filed a motion to dismiss counts four and five of the complaint as against them.

Count four alleged that Les Park and another defendant, while attending a meeting of the Union Township Board of Trustees, maliciously stated that appellant was "tearing up township roads and changing the flow of water."

---

1. Appellees have failed to file a brief or to otherwise respond on appeal.

Count four also alleges that as a result of the statements by appellee Les Park and others, appellant has suffered damages. Count five of the complaint alleges that appellees Rita and Les Park, along with others, acted "in unison, and with malice and with intent to harm the Plaintiff" by making false allegations against appellant to various public boards and officials, and that appellant suffered damages as a result.

Appellees' motion to dismiss asserted that because counts four and five alleged that appellees made the above statements to public officials, the statements were absolutely privileged, thus completely immunizing appellees from liability. Appellees argued that appellant's complaint therefore failed to state a claim upon which relief could be granted. Appellant filed a memorandum in opposition to the motion to dismiss.

The trial court found that appellees' statements were absolutely privileged and, thus, dismissed counts four and five as against appellees. Upon the trial court's finding that there was "no just reason for delay" pursuant to Civ.R. 54(B), appellant filed this timely appeal.

 In order to dismiss a complaint pursuant to Civ.R. 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1064–1065, citing *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 224–225, 327 N.E.2d 753, 754–755. In construing a complaint upon a motion to dismiss for failure to state a claim, the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party. *York, supra.* In resolving a Civ.R. 12(B)(6) motion, a court is confined to the averments contained in the complaint. See, *e.g., State ex rel. Alford v. Willoughby Civ. Serv. Comm.* (1979), 58 Ohio St.2d 221, 223, 12 O.O.3d 229, 230, 390 N.E.2d 782, 784. Appellate review of a ruling on such a motion presents a question of law which we determine *de novo* and independently of the trial court's decision.

 Affirmative defenses such as privilege (see Civ.R. 8[C] ) generally are not properly raised in a Civ.R. 12(B)(6) motion because they usually require reference to materials outside the complaint. See, *e.g., State ex rel. Freeman v. Morris* (1991), 62 Ohio St.3d 107, 579 N.E.2d 702; *Johnson v. Wilkinson* (1992), 84 Ohio App.3d 509, 516, 617 N.E.2d 707; *Nelson v. Pleasant* (1991), 73 Ohio App.3d 479, 482, 597 N.E.2d 1137, 1139. However, an exception to this general rule exists when the existence of the affirmative defense is obvious from the face of the complaint. See *Hughes v. Robinson Mem. Portage Cty. Hosp.* (1984), 16 Ohio App.3d 80, 82, 16 OBR 85, 86–87, 474 N.E.2d 638, 640, citing *Mills v.*

*Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, 60, 69 O.O.2d 350, 352–353, 320 N.E.2d 668, 671. Thus, we need to look at counts four and five of the complaint to see if a privilege exists based upon the plaintiff's pleadings. In order to do so, we must initially distinguish between an absolute and a qualified privilege.

The trial court decided that the allegedly slanderous statements made to the board of trustees were *absolutely* privileged.[2] In *Costanzo v. Gaul* (1980), 62 Ohio St.2d 106, 109, 16 O.O.3d 134, 135–136, 403 N.E.2d 979, 982, the Ohio Supreme Court addressed the issue of privileged statements in the context of a slander action against a city councilman, noting:

"Privileged communications are divided into two general classes: those which are absolutely privileged, and those which are qualifiedly or conditionally privileged. The basic difference between the two is that complete protection is afforded by absolute privilege, whereas a qualified or conditional privilege affords protection only in the absence of ill motive or malice in fact.

*"The application of absolute privilege is to be found in only very limited areas of activity in our society.* It has been generally limited to legislative and judicial proceedings, and other acts of state, such as communications made in the discharge of a duty of the Governor and heads of the executive departments of state.

" * * *

"[Absolute privilege] is conferred upon members of most state legislative bodies. * * * In Ohio, senators and representatives of the General Assembly are provided an absolute privilege for statements made in session, by Section 12, Article II, of the Ohio Constitution.

" * * *

"We [also] believe that the rule of absolute privilege may reasonably be applied to utterances made during the course of official proceedings *by members of local governing bodies,* at least where the statements relate to a matter under consideration, discussion, or debate." (Emphasis added.) *Id.* at 108–110, 16 O.O.3d at 135–137, 403 N.E.2d at 981–983.

■ The Ohio Supreme Court has also recognized that as a matter of public policy, the doctrine of absolute privilege applies in a judicial proceeding to

2. The trial court determined that the only communications to which the complaint made reference were communications which occurred during a November 1993 meeting of the Union Township Board of Trustees. However, the complaint is drafted more broadly, alleging that statements were made to various public officials and boards. Regardless of whether the communications were made solely to the board, or to the board and other officials and entities, our analytical process and conclusion remain unchanged.

statements which bear some reasonable relation to the subject matter of the action. See *Surace v. Wuliger* (1986), 25 Ohio St.3d 229, 232–233, 25 OBR 288, 290–292, 495 N.E.2d 939, 941–943, citing *Bigelow v. Brumley* (1941), 138 Ohio St. 574, 21 O.O. 471, 37 N.E.2d 584, and *Mauk v. Brundage* (1903), 68 Ohio St. 89, 67 N.E. 152. However, in light of the Ohio Supreme Court's admonition that absolute privilege should apply in only a limited number of circumstances, we agree with appellant that absolute privilege does not apply here as a matter of law.

The question in this case concerns statements by defendants who were not members of a legislative body, and is thus distinguishable from *Costanzo, supra.*[3] In addition, the statements were not made in connection with a judicial proceeding, therefore the obvious considerations which called for the application of absolute privilege in *Surace, supra,* are also absent.

Rather, the complaints about appellant's activities were made both at a legislative meeting and outside of such a meeting, to various public officials. We believe that absolute privilege should not be invoked in such a case. At the same time, we recognize that one who brings a legitimate complaint to the attention of a public official should not be prevented from doing so by the ever-present threat of a defamation action.

In *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 651 N.E.2d 1283, the Ohio Supreme Court recently addressed an issue similar to this one. In *A & B–Abell,* the Supreme Court considered whether, in a defamation action, statements to government officials concerning the qualifications of bidders for public-work contracts were protected by a privilege. The Supreme Court, finding a *qualified* privilege for such statements, wrote:

---

3. However, the absolute privilege exception may still apply in a different factual context. See *Executone of Northwest Ohio v. Mgt. Communication Consultants, Inc.* (July 15, 1983), Lucas App. No. L–83–101, unreported, discussing the application of absolute privilege to consultants employed by the Lucas County Board of Commissioners and the City Council of Toledo. The consultants were hired to do a study and report their results to the commissioners and city council. The consultants submitted their report at two public meetings. The plaintiff filed a complaint alleging that the report contained defamatory matter about it. The court of appeals viewed the facts that the consultants were hired by the city and county to compile the report and that the report concerned a matter clearly under inquiry by the city and county as critical in determining that absolute privilege applied. See, also, *N. Coast Cable Ltd. Partnership v. Hanneman* (1994), 98 Ohio App.3d 434, 439–440, 648 N.E.2d 875, 877–879, where the court found that absolute privilege applied to statements made by a person who received a letter from a city council asking him to appear and offer testimony. *Executone* and *N. Coast Cable* are clearly distinguishable from the present case, where appellees were not hired by the trustees, nor were they asked by the trustees to present a report or to testify regarding any matter under inquiry by the trustees.

" * * * The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.

" * * *

"The defense of qualified privilege is deeply rooted in public policy. It applies in a variety of situations where society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection.

" * * *

"One type of interest protected by a qualified privilege is the public interest. The 'public interest' privilege 'involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public.' " *Id.* at 8–9, 651 N.E.2d at 1290–1291.

The court went on to find that statements by those who provide information to government officials "in connection with the qualifications of bidders for public contracts are protected by a qualified privilege, because the public has an interest in ensuring that only competent, reliable and responsible contractors receive public work * * *." *Id.* at 9, 651 N.E.2d at 1291. See, also, *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609. The *A & B–Abell* court further noted that because the public has an interest in the public bidding process, it is the right of every citizen to communicate with the government on matters that affect the government's duties in that process.

In the present case, count four of the complaint alleges that the appellees made statements to the Union Township Trustees regarding appellant's alleged destruction of township roads and the change of water flow. Count five of the complaint alleges that appellees made a wide variety of statements, several of which might be construed as affecting the public interest, and several of which appear to have little, if any, bearing upon the public interest.

In examining the statements regarding the destruction of township roads under the *A & B–Abell* analysis, we note that the public clearly has an interest in preventing the destruction of township roads. In addition, it is undisputed that the allegedly defamatory statements were made to a public body which had a duty to oversee the maintenance of those roads. See R.C. 5571.01; R.C. 5571.02; *White v. Ohio Dept. of Transp.* (1990), 56 Ohio St.3d 39, 564 N.E.2d 462.

Counts four and five allude to several elements which are necessary to establish the defense of qualified privilege. However, both counts specifically allege that the offending statements were made with malice. In order to establish a qualified privilege, it must be shown that the defendant communicated

in good faith. See *A & B–Abell, supra,* 73 Ohio St.3d at 11–12, 651 N.E.2d at 1292–1293; *Costanzo, supra,* 62 Ohio St.2d at 109, 16 O.O.3d at 135–136, 403 N.E.2d at 982. The complaint on its face does not establish the existence of a qualified privilege and the defendants may not establish the existence of an affirmative defense by a motion to dismiss under Civ.R. 12(B)(6). *State ex rel. Freeman* and *Johnson, supra.* Accordingly, we hold that the trial court erred in dismissing counts four and five of the complaint against the appellees.

Our decision in this regard is only strengthened by the fact that appellees did not file a brief on appeal. Under App.R. 18(C), if an appellee fails to file a brief, we may accept the appellant's statement of facts as correct, and reverse the judgment of the trial court if the appellant's brief reasonably supports such an action. See, *e.g., State v. Middleton* (1993), 85 Ohio App.3d 403, 409, 619 N.E.2d 1113, 1117; *State ex rel. Schoener v. Hamilton Cty. Bd. of Commrs.* (1992), 84 Ohio App.3d 794, 802, 619 N.E.2d 2, 7, appeal dismissed (1993), 66 Ohio St.3d 1502, 613 N.E.2d 648. Clearly, in the present case, appellant's brief and the record support reversal of the trial court's decision.

Accordingly, we sustain appellant's assignment of error, reverse the judgment of the trial court, and remand this cause to the trial court for further disposition in conformity with our decision.

*Judgment reversed*
*and cause remanded.*

STEPHENSON and KLINE, JJ., concur.