DECISION AND JUDGMENT ENTRY
{¶ 1} In this invasion of privacy and defamation action, Rodney Bell appeals from two orders. First, he contests the trial court's dismissal of his claims against Les and Rita Park for failure to prosecute. Under Civ.R. 41(B), a trial court may dismiss a claim for failure to prosecute so long as it gives the parties notice of the possible dismissal and affords them an opportunity to explain why it should not dismiss the claim. Because we conclude that the court gave Bell notice of the possible dismissal and afforded him a viable opportunity to prosecute his claim, it did not err in dismissing his claim against the Parks. Next, he contests the summary judgment in favor of Dennis and Kathy Dennewitz and Tim and Charlotte Horton. The court found that the defense of qualified privilege protected the Dennewitzes' and Hortons' statements and that Bell failed to introduce any evidence of actual malice, which might have defeated the qualified privilege. Because we agree with the trial court that Bell failed to introduce any evidence that raises a genuine issue of material fact to indicate those defendants acted with actual malice, summary judgment was proper. The court also found that, as a matter of law, Bell's allegations for invasion of privacy could not survive. Since all of the alleged instances of invasion of privacy occurred when Bell was in the public eye, the court properly granted the Dennewitzes' and Hortons' summary judgment on this issue.
 {¶ 2} In August 1994, Bell filed a complaint naming twelve defendants and alleging various claims for defamation, invasion of privacy and tortious interference with contract. After four previous appeals and various stipulations by the parties, only the following six defendants remain:[1] Les and Rita Park, Dennis and Kathy Dennewitz, and Tim and Charlotte Horton. Bell's complaint alleged the defendants defamed him by writing a letter and making various telephone calls to the Environmental Protection Agency (EPA). Purportedly, the defendants' letter and telephone calls claimed that Bell, who was superintendent of a regional sewer district, falsified reports to the EPA and failed to properly perform his official duties. Next, Bell alleged the defendants made libelous statements at various county board meetings: i.e., that Bell "tore up" township roads and changed the flow of water when he built apartments on his private property; that Bell abused his public office by using the sewer district's equipment when he built his apartments; and that he worked on his apartments during the day, when he was supposed to be managing the sewer district. Bell also alleged that the defendants made libelous and slanderous statements to the Ross County Sheriff's Department and Prosecuting Attorney when they initiated complaints against him. Lastly, Bell alleged that the defendants invaded his privacy by watching him and taking pictures of him while he was working on his apartments.
 {¶ 3} In November of 1999, the trial court granted summary judgment to the Hortons and the Dennewitzes in the defamation and invasion of privacy actions against them. After Bell appealed that decision, we remanded the case to the trial court for lack of jurisdiction. We did so because that judgment was not a final appealable order as it did not dispose of Bell's claims against the Parks. See Bellv. Horton, 142 Ohio App.3d 694, 2001-Ohio-2593, 756 N.E.2d 1241. After our remand, the trial court held a status conference, granted the Parks' request to file a motion for summary judgment and ordered the motion filed within thirty days. Later, Parks' counsel requested two extensions, one on November 5, 2001, and the other on November 19, 2001. The court granted both extensions and ordered the Parks' motion to be filed on or before November 29, 2001. In the meantime, on November 18, 2001, the trial court notified all of the parties that it would dismiss the claims against the Parks if the parties took no action within fifteen days to conclude the matter. The Parks never filed a motion for summary judgment and Bell never took any further steps to proceed. On January 30, 2002, nearly two months after its fifteen-day limitation expired, the trial court dismissed Bell's claim against the Parks with prejudice. This dismissal disposed of the last outstanding claims in the action and thus made the court's prior summary judgment in favor of the Dennewitzes and the Hortons final and appealable. Bell filed this appeal assigning the following errors:
First assignment of error — The trial court erred in dismissing the case for want of prosecution.
Second assignment of error — The trial court erred in granting summary judgment in this case.
 {¶ 4} In his first assignment of error, Bell argues that the trial court erred in dismissing his claims against the Parks. We review a trial court's dismissal of a complaint with prejudice under a heightened abuse of discretion standard. Sazima v. Chalko, 86 Ohio St.3d 151, 158,1999-Ohio-92, 712 N.E.2d 729, citing Jones v. Hartranft, 78 Ohio St.3d 368,372, 1997-Ohio-203, 678 N.E.2d 530. An abuse of discretion is more than an error of judgment; it implies that the court's attitude is unreasonable, unconscionable, or arbitrary. Franklin Cty. Sheriff'sDept. v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 498, 506,589 N.E.2d 24. We utilize the heightened abuse of discretion standard because "disposition of cases on their merits is favored in the law."Jones, 78 Ohio St.3d at 371. But, when considering a Civ.R. 41(B)(1) dismissal with prejudice, courts may consider the drawn-out history of the litigation. Id. at 372.
 {¶ 5} Civ.R. 41(B)(1) provides, "[w]here the plaintiff fails to prosecute [a claim], * * * the court * * * on its own motion * * * may, after notice to the plaintiff's counsel, dismiss an action or claim." A court's dismissal under Civ.R. 41(B)(1) "operates as an adjudication upon the merits" unless the court provides otherwise in its order for dismissal. Civ.R. 41(B)(3).
 {¶ 6} Bell argues that the court dismissed his claim because of the Parks' failure to file their motion for summary judgment and not because of his own inaction. We do not agree. After allowing the Parks a total of approximately sixty days to file their motion for summary judgment, the court notified counsel for all parties, including Bell, that if no one took action within fifteen days, it would dismiss the action under Civ.R. 41(B)(1). While it is true the court granted the Parks leave to file their motion for summary judgment and granted them an extension after it notified all parties of its intent to dismiss the case, the court clearly notified Bell that it was considering a dismissal under Civ.R. 41(B)(1). The court's notification should have alerted Bell that he needed to take some form of action to prosecute his claims, such as filing his own motion for summary judgment or to request a trial or pretrial hearing date. Nonetheless, Bell took no action to conclude his claims against the Parks. Although the trial court does not expressly mention it, this case's extended history weighs heavily in favor of dismissal. In light of the court's notice to all parties to proceed, we cannot say that the trial court abused its discretion in dismissing Bell's claims against the Parks.
 {¶ 7} In his second assignment of error, Bell argues that the trial court erred in granting summary judgment against him on his claims against the Hortons and Dennewitzes. We review a trial court's decision to grant summary judgment de novo. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. We apply the same standard as the trial court, which is the standard contained in Civ.R. 56. Horsley v. Essman, 145 Ohio App.3d 438, 442, 2001-Ohio-2557,763 N.E.2d 245. Under Civ.R. 56(C), summary judgment is appropriate when: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, when viewed most strongly in favor of the non-moving party, that reasonable minds can come to a conclusion only in favor of the moving party. Grafton, supra.
 {¶ 8} In their motion for summary judgment, the Dennewitzes and Hortons argue that the defense of qualified privilege protects their alleged defamatory statements. In rebuttal, Bell seems to agree that the defense of qualified privilege applies but argues a genuine issue of material fact exists on the issue of the actual malice of the defendants. Courts define defamation as a false written or spoken publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his trade, business or profession. A B-Abell Elevator Co. v.Columbus/Cent. Ohio Bldg. Constr. Trades Council, 73 Ohio St.3d 1,7, 1995-Ohio-66, 651 N.E.2d 1283. For the purpose of reviewing the summary judgment, we assume that the Dennewitzes' and Hortons' statements are defamatory.
 {¶ 9} A person alleged to have published defamatory material may invoke the defense of qualified privilege in order to avoid liability.Id. A publication is qualifiedly privileged "where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performances of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do." Hahn v. Kotten (1975), 43 Ohio St.2d 237, 244,331 N.E.2d 713. In A B-Abell, the Supreme Court stated: "The defense of qualified privilege is deeply rooted in public policy. It applies in a variety of situations where society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection. Accordingly, the privilege does not attach to the communication, but to the occasion on which it is made. It does not change the actionable quality of the publication, but heightens the required degree of fault. This affords some latitude for error, thereby promoting the free flow of information on an occasion worthy of protection." Id. at 8-9.
 {¶ 10} Once the defense of qualified privilege attaches, the plaintiff can only defeat the privilege by a clear and convincing showing that the defendant made the communication with actual malice. Id. at 11 (stating that "[t]he issue of malice is consigned to the question of abuse of privilege. It does not arise unless a privilege is first found to exist."). Actual malice is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity. Jacobs v. Frank (1991), 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus; Hahn, 43 Ohio St.3d 237, paragraph two of the syllabus. The lack of an innocent motive is insufficient to defeat a qualified privilege. A B-Abell, 73 Ohio St.3d at 11.
 {¶ 11} In order to determine whether the defamatory statements are entitled to a qualified privilege, courts consider the circumstances under which they were made. Where, as here, the circumstances of the occasion for the defamatory publication are not in dispute, the determination of whether there is a qualified privilege is a question of law. A B-Abell, 73 Ohio St.3d at 7. We review questions of law on a de novo basis. Goodyear Tire Rubber Co. v. Aetna Cas. Sur.Co., 95 Ohio St.3d 512, 514, 2002-Ohio-2842, 769 N.E.2d 835.
 {¶ 12} Here, all of the defamatory statements involve matters of the public interest, i.e., whether Bell falsified reports to the EPA and failed to take proper cultures as the EPA required; whether Bell's construction on his private property destroyed township roads and changed the natural flow of water; and whether Bell worked on a private project while he was supposed to be working at the sewer plant. Moreover, the Dennewitzes and Hortons limited their defamatory statements to government bodies who, they believed, could fix the perceived problems, i.e., the EPA, the Ross County Sheriff's Department, the Ross County Prosecuting Attorney and various county boards.
 {¶ 13} In order to raise a genuine issue of material fact concerning good faith, Bell argues that a prior dispute between the parties motivated the Dennewitzes' and Hortons' defamatory statements. However, when determining whether an occasion is privileged, courts are not concerned with a particular defendant's motive. Rather, courts are concerned with the circumstances of the communication, i.e., where and to whom the communication was made. See A B-Abell,73 Ohio St.3d at 10. Therefore, even if a prior dispute with Bell motivated the Dennewitzes' and Hortons' defamatory statements, the law would still protect them under the defense of qualified privilege. Bell also suggests that the Dennewitzes and Hortons did not make their defamatory statements in good faith because they had never complained to a public body in the past. This is nonsensical. Good faith is not premised upon prior instances of public concern. Therefore, the Dennewitzes and Hortons presented sufficient summary judgment evidence on the issue of qualified privilege to require Bell to present some evidence that created an issue of fact about the existence of actual malice on the defendants' part.
 {¶ 14} In order to establish an issue of fact about actual malice, Bell contends that the Dennewitzes and Hortons made the allegations without prior knowledge and with no investigation. The failure to investigate before publishing a defamatory statement will not defeat a qualified privilege, unless "the defendant entertained serious doubts as to the truth of his statements or the veracity or accuracy of his sources." Id. at 12-13. Here, Bell introduced evidence that the Dennewitzes and Hortons may have failed to adequately investigate the allegations against him. However, Bell never introduced evidence to suggest that the Dennewitzes and Hortons entertained, or should have entertained, serious doubts regarding the truth of their defamatory statements or the veracity of their sources. Nor is Bell's contention that many of the Dennewitzes' and Hortons' claims were later found meritless enough to establish a question of fact. The mere fact that the Dennewitzes' and Hortons' claims proved to be false may evidence poor judgment, poor investigation, a simple mistake, or even negligence, but it does not rise to the level of a conscious disregard of the truth or falsity. Moreover, as we already indicated the presence of some "ulterior motive" is not enough to defeat the existence of a qualified privilege. Therefore, Bell failed to carry his summary judgment burden of producing evidence that raises an issue of fact concerning actual malice.
 {¶ 15} The trial court also found that the Dennewitzes and Hortons activities do not rise to an invasion of Bell's privacy. The right of privacy is the right to be let alone, to be free from unwarranted publicity and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned. Housh v.Peth (1956), 165 Ohio St. 35, 133 N.E.2d 340, paragraph one of the syllabus. To be actionable the wrongful intrusion into one's private activities must be of such a character "to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."Id. at paragraph two of the syllabus. Moreover, no liability will attach when a defendant observes a person, or even takes his photograph while that person is on a public highway or otherwise in the public eye. Yorkv. General Elec. Co. (2001), 144 Ohio App.3d 191, 194, 759 N.E.2d 865, citing 3 Restatement of the Law 2d, Torts (1977), Section 652B. Therefore, the invasion of privacy must involve the viewing of affairs that are private and not in public view. Id.
 {¶ 16} Here, Bell alleges that the Dennewitzes and Hortons invaded his privacy by watching, photographing and documenting him, from their own property and the public road, while he worked on his apartments; standing at the edge of his property while laughing and making comments; and pointing at his property from the road and from their property while making comments. The Dennewitzes and Hortons acknowledge that they observed and documented some of Bell's daily activities, including taking pictures of him while he worked, in plain view, on his apartments and following him on public roads. However, they reason that their activities are not an invasion of privacy because, at all times, Bell was in public view and not secluded or involved in any private affair. We agree.
 {¶ 17} As a matter of law, the Dennewitzes' and Hortons' activities do not rise to the level of an invasion of privacy because all of Bell's allegations involve observations of him while he was in the public eye. For example, the Dennewitzes and Hortons observed and documented Bell's activities from a public road and their own property while he worked outside, on his own property, building an apartment complex and while he commuted on a public road. Therefore, the trial court properly granted the Dennewitzes' and Hortons' motion for summary judgment on this issue.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Kline, J.: Concur in Judgment and Opinion.
[1] For a complete background of the case, see Bell v. Horton,142 Ohio App.3d 694, 2001-Ohio-2593, 756 N.E.2d 1241; Bell v. Horton
(Aug. 22, 1996), Ross App. No. 95CA2129; Bell v. Horton (1996),113 Ohio App.3d 363, 680 N.E.2d 1272; and Bell v. Horton (1995),107 Ohio App.3d 824, 669 N.E.2d 546.