OPINION
{¶ 1} Defendant-Appellant, Dr. Robert Robinson ("Robinson"), appeals the November 12, 2004 judgment of the Common Pleas Court of Paulding County granting summary judgment in favor of plaintiff-appellee, Paulding County Hospital ("Paulding Hospital"), denying Robinson's motion for summary judgment and dismissing, with prejudice, Robinson's amended counterclaim.
 {¶ 2} Paulding Hospital operates a hospital in Paulding County, Ohio. In 2000, Paulding Hospital initiated discussions with Robinson about him establishing a practice in Woodburn, Indiana. The discussions resulted in Paulding Hospital and Robinson entering into an "Advance Agreement" ("agreement") dated May 3, 2000. The purpose of the agreement was to address Paulding Hospital's concerns regarding their demand for a physician in their "community service area." The agreement provided that Paulding Hospital would advance money to Robinson to help him establish his practice in the Paulding County area for two years. The sums advanced to Robinson were a loan to Robinson; however, the loan would be forgiven if Robinson maintained a full-time practice in the Paulding County area. The agreement defined the "Paulding County area" as the geographic area covered by Paulding County, Ohio and adjacent counties from which Paulding Hospital draws the majority of its patients. The amount due under the agreement was determined by comparing the expenses advanced and the income generated from Robinson's family practice clinic and inhospital billing on a monthly basis.
 {¶ 3} After the agreement was signed, Robinson opened a clinic in Woodburn, Indiana. At the end of the two year term of the agreement, the parties agreed to modify the agreement. On June 28, 2002, the parties signed a written modification of agreement and note ("note"). The note allowed Robinson to make monthly payments of $2,039.41 over twenty years in order to repay the initial advancement. The note also contained a provision that if Robinson ceased his full-time practice in the Paulding, Ohio area within three years after the date of the note, he would be in default and the balance would be due immediately.
 {¶ 4} In January, 2003, Robinson closed his clinic in Woodburn, Indiana. Robinson subsequently worked at several hospitals in Indiana and at the Van Wert County Hospital Emergency Department in Van Wert County, Ohio. Robinson initially worked part-time at the hospital in Van Wert. Robinson then increased his employment to full-time status at the end of July, 2003.
 {¶ 5} On July 31, 2003, Paulding Hospital filed a complaint against Robinson praying for judgment in the amount of $249,244.90, plus interest, due on the note. On September 2, 2003, Robinson filed a motion to dismiss, which was subsequently withdrawn, and motion for change of venue. Paulding Hospital filed a motion in opposition to Robinson's motion for change of venue on October 8, 2003. On October 27, 2003, the trial court denied Robinson's motion for change of venue.
 {¶ 6} Robinson filed his answer and counterclaim to the complaint on October 20, 2003. On October 27, 2003, Robinson filed an amended answer and counterclaim. Paulding Hospital filed an answer to the counterclaim on November 6, 2003. Discovery was then conducted in the case.
 {¶ 7} Robinson filed a motion for summary judgment on April 30, 2004. On May 3, 2004, Paulding Hospital filed its motion for summary judgment. At a pretrial conference on June 28, 2004, the trial court noted that there were apparent discrepancies between Robinson's deposition testimony and his affidavit. With the parties' agreement, the court ordered a supplemental deposition of Robinson for purposes of clarifying the apparent discrepancy. The court also granted the parties leave to file supplemental, post-deposition memoranda in support of or in opposition to the presently pending motions for summary judgment.
 {¶ 8} Robinson was deposed again; however, Paulding Hospital did not believe Robinson had cleared up the issue. Therefore, Paulding Hospital obtained an affidavit from Robinson's employer at Van Wert County Hospital setting forth Robinson's employment history. Robinson filed an amended motion for summary judgment on October 4, 2004. Paulding Hospital filed a motion to strike Robinson's amended motion for summary judgment as untimely and beyond the scope of the court's prior order. In its November 12, 2004 judgment entry, the trial court granted summary judgment in favor of Paulding Hospital and denied Robinson's motion for summary judgment and dismissed his counterclaim with prejudice. It is from this judgment that Robinson now appeals asserting the following four assignments of error.
The Court erred in denying Defendant's Motion to Change Venue.
 The Court erred in granting Plaintiff's Motion for Summary Judgment.
 The Court erred in dismissing Defendant's amended counterclaimwith prejudice.
 The Court erred in denying Defendant's Motion for Summary Judgment.
 {¶ 9} In his first assignment of error, Robinson argues that the trial court erred in denying his motion for change of venue. Robinson argues that he set forth reasons in support of the motion which warranted a change of venue. Robinson also argues that Paulding Hospital did not specifically refute the statements Robinson made in support of his motion to change venue.
 {¶ 10} Civ.R. 3(C)(4) provides that "[u]pon motion of any party or upon its own motion the court may transfer any action to an adjoining county within this state when it appears that a fair and impartial trial cannot be had in the county in which the suit is pending." A trial court's decision on a motion to change venue is reviewed under an abuse of discretion standard. Premier Assoc., Ltd. v. Loper,149 Ohio App.3d 660, 2002-Ohio-5538, 778 N.E.2d 630, at ¶ 37. Abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 11} In a motion for change of venue, the moving party bears the burden of proof. Grenga v. Smith, 11th Dist. No. 2001-T-0040, 2002-Ohio-1179, 2002 WL 409022, *3. Since Robinson filed the motion for change of venue, he carried the burden of showing why venue should be changed. In his motion, Robinson asserted the following as reasons why he could not receive a fair and impartial trial in Paulding County: Robinson had contact with hundreds of people who would be potential jurors; Paulding Hospital is a large public institution that is widely recognized in Paulding County and employs many people in the county; Paulding Hospital is supported by public funds which may suggest to jurors that repayment of the note is a repayment of taxes or assessments to residents of Paulding County; and Robinson had regular business contact with Cathy Webb whose relationship as wife of the judge of the Court of Common Pleas may impact jurors in the event she is called as a witness.
 {¶ 12} Upon review, we conclude that Robinson failed to show any likelihood that he would not receive a fair and impartial trial in Paulding County. The only evidence Robinson presented in support of his assertions was his own affidavit that included self-serving conclusive statements. These vague and indefinite statements hardly qualify as evidence that Robinson could not receive a fair and impartial trial in Paulding County. See Grenga, 2002 WL 409022, at *4. Robinson failed to provide any substantial evidence to prove any of his assertions as to why he could not receive a fair trial in Paulding County.
 {¶ 13} Further, Robinson's assertion that the judge of the Court of Common Pleas, as one of several public officials who appoints the hospital's board of trustees, is biased against Robinson is not properly before this court. Civ.R. 3(C)(4) does not entitle Robinson to a change of venue simply because he believes that the trial judge is biased or prejudiced against him. Williams v. Williams (Dec. 16, 1996), 12th Dist. No. CA96-01-015, unreported, 1996 WL 723531, *3, citing Winkle v.Southdown, Inc. (Sept. 3, 1993), 2d Dist. No. 92-CA-107, unreported, 1993 WL 333643. Rather, an aggrieved party's exclusive remedy under these circumstances is to file an affidavit of bias and prejudice with the Chief Justice of the Ohio Supreme Court pursuant to R.C. 2701.03. Id.
 {¶ 14} Therefore, we hold that the trial court did not err in denying Robinson's motion for change of venue. Accordingly, Robinson's first assignment of error is overruled.
 {¶ 15} In his second assignment of error, Robinson argues that there were genuine issues of material fact precluding summary judgment in favor of Paulding County. In his fourth assignment of error, Robinson argues that there was uncontroverted evidence that supported summary judgment in his favor. As these assignments of error are related, we have chosen to address them together.
 {¶ 16} We begin by noting that the standard for review of a grant of summary judgment is one of de novo review. Lorain Nat'l Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 17} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, syllabus, 526 N.E.2d 798. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg,65 Ohio St.3d 356, 360, 1992-Ohio-95, 604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be granted. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
 {¶ 18} The Paulding Hospital raises numerous arguments as to why summary judgment in its favor is proper. The first issue we address is whether there are any genuine issues of material fact regarding the geographic area in which Robinson was required to practice medicine as described in the agreement. The agreement provided that the "`hospital's community service area' shall mean the geographic area covered by Paulding County, Ohio and adjacent counties from which the Hospital draws the majority of its patients." May 3, 2000 Advance Agreement, p. 3. Further, the agreement provided that Robinson's duties included:
(a) Maintain[ing] a full-time primary care practice in the Hospital'sCommunity Service Area (for purposes of this Agreement, "full-timepractice" shall mean that Physician shall devote his full professionaltime, skill and labor to a medical practice for a minimum of forty-eight(48) weeks per year with a minimum of four and one-half (4-1/2) days perweek of clinical/surgical activity in Paulding County, Ohio) * * * [.]
Advance Agreement, p. 10.
 {¶ 19} In his brief, Robinson argues that any definition of the hospital's community service area was modified by the hospital's acknowledgment and support of Robinson's clinic in Woodburn, Indiana. Robinson attempts to cast doubt on whether he was ever practicing in Paulding Hospital's community service area. However, Robinson did not contest the definition of the hospital's community service area contained in the agreement in the proceedings in the trial court. In fact, Robinson asserted that both he and Paulding Hospital knew Robinson would not be practicing medicine full-time in Paulding County. Robinson acknowledged that both parties considered his clinic in Woodburn, Indiana to be within the Paulding County area. Robinson stated in his affidavit that at no time did he believe the Woodburn clinic was outside the areas described in the agreement or modification. In his motion for summary judgment, Robinson acknowledged that establishing a medical practice anywhere in the defined "area" would have met the requirements of the agreement. Therefore, in response to the claim that he had defaulted on the note, Robinson asserted that he continued to practice medicine within the defined "area" after he closed the Woodburn clinic. Robinson considered Van Wert to be within the area covered by the agreement.
 {¶ 20} The only question left for this Court to consider is whether Robinson failed to maintain a full-time practice at any time during the three years subsequent to the completion of the advance period. The record indicates that Robinson was not completely forthcoming with information regarding his employment subsequent to the closing of the Woodburn Clinic. While there are discrepancies in Robinson's deposition testimony and his affidavit, this alone is not enough to create a genuine issue of material fact. The record clearly supports the trial court's finding that Robinson did not maintain full-time employment in Paulding Hospital's service area subsequent to the closing of the Woodburn Clinic.
 {¶ 21} The record reveals that Robinson was employed at several places from January, 2003 until August, 2003. However, the record is clear that Robinson was not employed full-time in Paulding Hospital's service area until late July, 2003/early August, 2003. The record contains documents from RCR Emergency Services, which provides emergency room physician services to Van Wert County Hospital, setting forth the dates and hours Robinson worked on behalf of RCR in Van Wert County Hospital. These documents, along with Robinson's deposition testimony, show that Robinson maintained full-time employment at Van Wert County Hospital only through March, 2004. At the time of Robinson's supplemental deposition on July 21, 2004, Robinson was not currently employed full-time in the Paulding Hospital service area. The record clearly shows that Robinson failed to maintain full-time employment in the Paulding area from January, 2003 through July, 2003 and from April, 2004 until August, 2004. Therefore, no genuine issue of material fact exists regarding Robinson's failure to maintain a full-time practice in the Paulding Hospital service area during the three years subsequent to the end of the advance period.
 {¶ 22} Next, Robinson argues that Paulding Hospital expressly authorized him to practice medicine outside of the area defined in the documents. Robinson claims that he had a conversation with Gary Adkins ("Adkins"), CEO of Paulding Hospital, in which Adkins released Robinson of the geographic restrictions for his practice. Specifically, Robinson claims he approached Adkins in November, 2002 and expressed his concern regarding a loss of patients at his clinic and informed Adkins that he needed to go to Parkview Hospital in Indiana in order to survive. Robinson claims Adkins said he didn't care if Robinson went to Parkview Hospital as long as Paulding Hospital still got some admissions. Robinson asserts that these alleged statements made by Adkins modified the agreement between the parties.
 {¶ 23} However, Robinson does not claim that Adkins modified the requirement that Robinson maintain a full-time practice throughout the three years following the advance period. Robinson only claims that Adkins acquiesced in Robinson's decision to work at Parkview Hospital. It appears from the record that Parkview Hospital is in Allen County, Indiana, the same county in which Robinson had operated the Woodburn Clinic. Therefore, even assuming that Adkins did acquiesce in Robinson's decision to work at Parkview Hospital, nothing in the conversation could be construed to modify the agreement. Parkview Hospital is in a county adjacent to Paulding County and, therefore, within the hospital's service area.
 {¶ 24} It does not appear that Paulding Hospital takes issue with Robinson's employment at Parkview Hospital, but rather takes issue with Robinson's failure to maintain a full-time practice. Indeed, Robinson's failure to maintain a full-time practice in the service area for three years following the advance period is the condition that caused Robinson's default on the note. It has already been established above that the record shows Robinson failed to maintain a full-time practice from the period of January, 2003 through July, 2003. Therefore, Robinson's argument that Adkins verbally modified the agreement is without merit.
 {¶ 25} Robinson also argues that Paulding Hospital breached the agreement between the parties by hiring at least two additional physicians in the same area in which Robinson practiced medicine. Robinson asserts that the hiring of these additional physicians reduced his patient base to the point where he could no longer continue operating his Woodburn Clinic.
 {¶ 26} We first note that Robinson did not give notice to Paulding Hospital of this alleged breach prior to the hospital's filing of the complaint. The agreement provided that all notices, including notices of material breach by Paulding Hospital, should be given in writing. Robinson claims he verbally informed Adkins that his practice at the Woodburn Clinic was suffering due to Paulding Hospital's hiring of additional physicians. However, Robinson never notified Paulding Hospital of this claim in writing, nor did Robinson assert that he ever referred to the hospital's hiring of other physicians as a breach of the agreement.
 {¶ 27} Robinson acknowledges that the agreement between the parties did not prohibit Paulding Hospital from hiring other physicians for the same service area. However, Robinson asserts that Paulding Hospital was bound by an implied duty of good faith not to hire other physicians for the same service area if it would harm Robinson's medical practice. "What the duty of good faith consists of depends upon the language of the contract in each case which leads to an evaluation of reasonable expectations of the parties." B-Right Trucking v. Interstate PlazaConsulting, 154 Ohio App.3d 545, 555, 2003-Ohio-5156, 798 N.E.2d 29.
 {¶ 28} The agreement that was signed by the parties on May 3, 2000 included a background information section that explained Paulding Hospital's reasons for entering into the agreement. The background information section provided: "[a] documented demand exists for primary care physician services for the patients in the Hospital's Community Service Area and Hospital is endeavoring to meet current and future primary care service needs of Hospital's Community Service Area[.]" The record indicates that it was clear to both parties that Paulding Hospital entered into the agreement with Robinson in an effort to alleviate the need for physician services in its service area. Since the hospital's service area included Paulding County, as well as the adjoining counties, it seems unrealistic that Robinson expected Paulding Hospital to enter into such an agreement with only one physician, namely Robinson. There is nothing in the agreement or modification that suggests Paulding Hospital intended to enter into an exclusive arrangement with Robinson. Further, as indicated above, Robinson was not required to operate the Woodburn Clinic under the agreement. Robinson was only required to maintain a full-time medical practice within Paulding Hospital's service area. The agreement did not prevent Robinson from closing the Woodburn Clinic and practicing medicine at a different facility or in a different county, so long as the area in which Robinson practiced was within the hospital's service area. The record, therefore, does not support Robinson's allegation that Paulding Hospital breached its duty of good faith by hiring additional physicians for the service area.
 {¶ 29} Finally, Robinson argues that the agreement between the parties is illegal and, thus, void and unenforceable. Robinson first raised this argument in his amended motion for summary judgment. In this argument, Robinson asserts that the agreement violates federal law and regulations on physician compensation and recruitment. Specifically, Robinson asserts that the agreement between the parties required Robinson to refer patients to Paulding Hospital which is prohibited by the anti-kickback statutes and Stark laws.
 {¶ 30} Certain physician referrals are limited by 42 U.S.C. § 1395nn. Specifically, this statute provides, in pertinent part:
(a) Prohibition of certain referrals
 (1) In general
 Except as provided in subsection (b) of this section, if a physician(or an immediate family member of such physician) has a financialrelationship with an entity specified in paragraph (2), then —
 (A) the physician may not make a referral to the entity for thefurnishing of designated health services for which payment otherwise maybe made under this subchapter, and
 (B) the entity may not present or cause to be presented a claim underthis subchapter or bill to any individual, third party payor, or otherentity for designated health services furnished pursuant to a referralprohibited under subparagraph (A).
 (2) Financial relationship specified
 For purposes of this section, a financial relationship of a physician(or an immediate family member of such physician) with an entityspecified in this paragraph is —
 (A) except as provided in subsections (c) and (d) of this section, anownership or investment interest in the entity, or
 (B) except as provided in subsection (e) of this section, acompensation arrangement (as defined in subsection (h)(1) of thissection) between the physician (or an immediate family member of suchphysician) and the entity.
* * *
(e) Exceptions relating to other compensation arrangements
* * *
(5) Physician recruitment
 In the case of remuneration which is provided by a hospital to aphysician to induce the physician to relocate to the geographic areaserved by the hospital in order to be a member of the medical staff ofthe hospital, if —
 (A) the physician is not required to refer patients to the hospital,
 (B) the amount of the remuneration under the arrangement is notdetermined in a manner that takes into account (directly or indirectly)the volume or value of any referrals by the referring physician, and
 (C) the arrangement meets such other requirements as the Secretary mayimpose by regulation as needed to protect against program or patientabuse.
 {¶ 31} Robinson claims a genuine issue of material fact exists with regard to whether his compensation varied based on his referral of patients to Paulding Hospital. The record indicates that during the advance period Paulding Hospital guaranteed Robinson an income of $10,000 per month. Paulding Hospital supplemented Robinson's income to the extent his income fell below $10,000 in a given month. There is nothing in the agreement that indicates Robinson's income was calculated by taking into consideration how many referrals Robinson made to Paulding Hospital. Rather, the agreement provides that Paulding Hospital would advance to Robinson "an amount equal to the Guarantee Amount (not to exceed the Maximum Amount) plus the Covered Expenses incurred during such month less the Physician Receipts collected during such month." May 3, 2000 Advance Agreement, p. 5. "Physician Receipts" is defined in the agreement as "any and all actual revenues, receipts and income of any kind * * *." Id. The agreement does not provide for any additional incentive for Robinson's referrals to Paulding Hospital.
 {¶ 32} Assuming arguendo that the agreement between the parties was of the kind governed by 42 U.S.C. § 1395nn, Robinson relies upon a definition of the "geographic area served by the hospital" in § 1395nn(e)(5) that was published on March 26, 2004. This definition that clarified a phrase in the statute was not in effect at the time the agreement was entered into by the parties, at the time of the modification or at the time Paulding Hospital filed its complaint against Robinson. Paulding Hospital considered Robinson to be in default of the note prior to the publication of the definition of the geographic area. Therefore, Robinson has failed to show that a genuine issue of material fact exists as to whether the agreement could be construed as violating any statute during the time the agreement was in effect.
 {¶ 33} Upon our review of the record, we find that summary judgment in favor of Paulding Hospital was proper. The record, therefore, does not support summary judgment in favor of Robinson. Thus, the trial court properly granted Paulding Hospital's motion for summary judgment and properly denied Robinson's motion for summary judgment. Accordingly, Robinson's second and fourth assignments of error are overruled.
 {¶ 34} In his third assignment of error, Robinson argues that he presented evidence to support his counterclaim and the trial court erred in dismissing the counterclaim with prejudice. Robinson set forth his counterclaim along with his answer to the complaint on October 21, 2003. Paulding Hospital moved for summary judgment on the complaint and the counterclaim on May 3, 2004. While no separate motion to dismiss the counterclaim was filed, urged as a fatal omission by Robinson in his brief, the trial court dismissed the counterclaim when it determined that Paulding Hospital was entitled to summary judgment as a matter of law for the relief requested in its complaint. Robinson argues that he should have been permitted to present his counterclaim at trial despite the trial court's granting of summary judgment in favor of Paulding Hospital.
 {¶ 35} It appears that the trial court treated Paulding Hospital's motion for summary judgment on Robinson's counterclaim as a motion to dismiss for failure to state a cognizable claim. Civ.R. 12(H)(2) provides that:
A defense of failure to state a claim upon which relief can be granted* * * may be made in any pleading permitted or ordered under Rule 7(A),or by motion for judgment on the pleadings, or at the trial on themerits.
 {¶ 36} Although Paulding Hospital did not expressly state in its motion for summary judgment that Robinson's claims should be dismissed under Civ.R. 12(H), the Ohio Supreme Court has held that the trial court itself is permitted to dismiss sua sponte a claim or complaint for failure to state a cognizable claim. "Sua sponte dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate if the complaint is frivolous or the claimant obviously cannot prevail on the facts alleged in the complaint." State ex rel. Kreps v.Christiansen, 88 Ohio St.3d 313, 316, 2000-Ohio-335, 725 N.E.2d 663.
 {¶ 37} A dismissal of a complaint or counterclaim for failure to state a claim upon which relief can be granted is reviewed de novo, as it involves a purely legal issue. Bell v. Horton (1995),107 Ohio App.3d 824, 826, 669 N.E.2d 546. In order to dismiss a complaint for failure to state a cognizable claim, it must appear beyond doubt that the party cannot prove a set of facts in support of the claim that would entitle that party to relief. York v. Ohio State Hwy. Patrol
(1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063. In determining whether a party has presented a claim for which relief may be granted, the court must presume that all of the factual allegations in the complaint are true and make all reasonable inferences in favor of the nonmoving party. Id.
 {¶ 38} Robinson's counterclaim fails to show that Paulding Hospital breached any specific provision of the agreement between the parties. Although Robinson alleges that Paulding Hospital breached the agreement by both its actions and its failure to act, there are no provisions in the agreement that support Robinson's assertions. Further, Robinson never gave written notice to Paulding Hospital of alleged breaches, as required by the agreement. Thus, even if these actions and failures to act on the part of Paulding Hospital are true, Robinson would not have a cognizable claim against Paulding Hospital. Therefore, it appears that it was proper for the trial court to dismiss Robinson's counterclaim for failure to state a claim for which relief could be granted. Accordingly, Robinson's third assignment of error is overruled.
 {¶ 39} Having found no merit with the assignments of error, the judgment of the Common Pleas Court of Paulding County is affirmed.
Judgment affirmed.
 Rogers and Shaw, JJ., concur.